## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN DREXLER, individually and on behalf
of all others similarly situated,

                Plaintiff,

      v.

CLARKE'S RESTAURANT, INC.,

                Defendant.

)
)
)
)
)
)
)
)
)
)

Case No.　　07 C 6485

Judge Shadur

Magistrate Judge Keys

### PLAINTIFF'S FIRST SET OF WRITTEN
### DISCOVERY REQUESTS (INTERROGATORIES, REQUESTS
### FOR PRODUCTION AND REQUESTS FOR ADMISSIONS OF FACT)

Plaintiff John Drexler requests that Clarke's Restaurant, Inc. ("Defendant") answer the

following interrogatories, requests for production and requests for admissions of fact in the manner

and within the time stated in Fed. R. Civ. P. 33, 34 and 36 or otherwise ordered by the Court.

### Definitions

As used herein, the words and phrases set out below have the following meanings:

1. "Business Association" shall mean any formal or informal group, entity or association that has the purpose of promoting and/or advising businesses.

2. "Business Publication" shall mean any written or electronic publication related to operating a business.

3. "Card" shall mean a debit or credit card.

4. "Card Number" shall mean the account number that appears on the front of Card.

5. "Cardholder" shall mean an authorized user of a Card.

6. "Card Issuer" shall mean a financial institution that issues Cards.

7. "DSS" shall mean the Payment Card Industry Data Security Standard.

EXHIBIT A

8. "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best approximation thereof.

9. "Defendant", "You" and/or "Your" shall mean defendant Clarke's Restaurant, Inc. and its present and former attorneys, officers, directors, managers, members, employees, agents, accountants, advisors, parents, subsidiaries, affiliates, representatives, and any other person acting or purporting to act on its behalf.

10. "Document" or "documents" shall mean every original, and every copy of any original or copy which differs in any way from any original, of every writing or recording of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatever, including without limitation, letters, facsimile transmissions, books, records, reports, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, tabulations, bulletins, press releases, computer programs, data contained in computers, computer disks or diskettes, data sheets, analyses, summaries, ledgers, accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registrations, solicitations, minutes, stock ledgers, stock certificates, licenses, permits, calendars, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agendas, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, studies, instruments, assignments, applications, offers, acceptances, proposals, financing statements, documents of title, forecasts or appraisals, purchase orders, invoices, orders or acknowledgments, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, tapes and records, maps, plats, surveys, drawings, sketches, graphs, charts, plans, state and federal governmental hearings and reports, laboratory or engineering reports, correspondence, communications, electronic mail, voicemail, telegrams, telexes, cables, memoranda, notes, notebooks, worksheets, reports, lists, note charts, summaries or records of telephone conversations, summaries or records of personal conversations, interviews, records or minutes of meetings or negotiations, opinions or reports of consultants, accounting of any kind, work papers and transcripts, and generally should be given the broadest possible meaning under the Federal Rules of Civil Procedure.

11. "Employee" shall mean, in addition to an actual employee, any form of representative, consultant, engineer, agent, consulting agent or independent contractor or any other person acting, or purporting to act, on behalf of the "employer" or principal.

12. "Expiration Date" shall mean the date on which a Card expires.

13. "FACTA" shall mean the Fair and Accurate Credit Transactions Act 0f 2003 (Pub. L. 108-159, 111 Stat. 1952), which amended the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*

14. "Identify" shall mean:

(a)    as to an individual, stating his or her:

2

  (1) full name customarily used at the present time and any other full names;

  (2) present or last known residence address; and

  (3) name and address of his or her current employer, current employer's business, and job title, status or classification with current employer.

 (b) as to any person other than an individual, stating:

  (1) its legal name and any other names used by it; and

  (2) the form or manner of its organization (e.g., partnership, corporation, sole proprietorship, etc.).

 (c) as to a conversation, stating:

  (1) the persons who were involved in the conversation;

  (2) all persons who were present when the conversation took place;

  (3) where the conversation occurred;

  (4) when the conversation occurred;

  (5) the general topic or topics of the conversation; and

  (6) as close to verbatim as possible the conversation.

15. "MasterCard" shall mean the membership corporation of financial institutions that issue MasterCard cards and/or sign Merchants to accept MasterCard cards for payment of goods or services.

16. "Merchant" shall mean any business that is authorized to accept Cards for the payment of goods or services.

17. "Merchant Agreement" shall mean the contract between a Merchant and a Merchant Bank under which the Merchant participates in a payment system (e.g., Visa, MasterCard).

18. "Merchant Bank" shall mean a financial institution that enters into agreements with Merchants to accept Cards as payment for goods or services.

19. "Oral communication" shall mean any utterance heard by another person, whether in person, by telephone, or otherwise, as well as all mechanical or electronic sound recordings or transcripts thereof.

20. "PCI" shall mean the Payment Card Industry.

21. "Person" or "persons" shall mean, without limiting the generality of its meaning, every natural person, corporate entity, partnership, sole proprietorship, limited liability company, joint venture, association, trust or any other business, social, political or governmental organization, entity or arrangement of whatever nature, whether real, juridical, incorporated or unincorporated, encompassed within the usual and customary meaning of "person" or "persons," or otherwise encompassed within this definition.

22. "Plaintiff" shall mean plaintiff John Drexler and his present and former attorneys, agents, accountants, advisors, representatives and any other person acting or purporting to act on her behalf.

23. "POS Terminal", also known as point-of-sale terminal, shall mean the electronic device used for authorizing and processing Transactions at the point of sale.

24. "Related to" or "relating to" shall mean directly or indirectly mentioning or describing, identifying, referring to, pertaining to, being connected with, or reflecting upon a stated subject matter.

25. "Sales Receipt" shall mean the electronically-printed record of a Transaction and issued to a Cardholder.

26. "SSC" shall mean Payment Card Industry Security Standards Council.

27. "Trade Association" shall mean any formal or informal group, entity or association that has the purpose of promoting and/or advising your industry.

28. "Trade Publication" shall mean any written or electronic publication related to your industry.

29. "Transaction" shall mean the act between a Cardholder and a Merchant that results in the sale of goods or services.

30. "Truncation Requirements" shall mean the limitation on printing debit or credit card numbers and expiration dates on electronically-printed Sales Receipts, as set forth in 15 U.S.C. § 1681c(g)(1).

31. "Visa" shall mean the membership corporation of financial institutions that issue Visa cards and/or sign Merchants to accept Visa cards for payment of goods or services.

32. "Written communication" shall mean any document that conveys a thought, message or any other information, including, but not limited to letters, memoranda, reports, invoices, purchase orders and electronic transmissions.

## Instructions

In construing these requests:

A. The singular shall include the plural and the plural shall include the singular.

B. A masculine, feminine or neuter pronoun shall not exclude the other genders.

C. "And" as well as "or" shall be construed either disjunctively, or conjunctively, as necessary to bring within the scope of a request any document that would otherwise be construed as outside

the scope of a request and to bring within the scope of an interrogatory any information that would otherwise be construed as outside the scope of a request.

D.  With respect to any documents which are withheld on any claim of privilege, you are requested to provide the following information as to each such document:

     (1)   the date appearing on the document, or if no such date appears, the date on which the document was created;

     (2)   the name of its author, or the addresser and/or sender in the case of letters, office memoranda, or correspondence;

     (3)   the name of the person to whom the document was sent;

     (4)   its type (e.g. letter, memorandum, etc.), nature (e.g., typewritten, long-hand, etc.) and number of pages; and

     (5)   a brief description of the subject matter of the documents.

E.  All objections or answers that fail or refuse to respond fully to any request on the ground of any claim or privilege of any kind whatever shall:

     (1)   state the nature of the claim of privilege and the facts relied upon in support of the claim of privilege;

     (2)   identify all documents related to the claim of privilege; and

     (3)   identify all persons having knowledge of any facts relating to the claim of privilege.

## **Time Period Covered By This Request**

Unless otherwise indicated, each of the following requests information for the period December 4, 2003 to the date on which they are answered through the date on which they are answered.

## **Interrogatories**

**Interrogatory No. 1:**     Identify the person(s) who provided information in responding to these interrogatories and the separate requests for admissions of fact, and identify the particular interrogatory(ies) and/or request(s) for admission of fact for which each person provided information.

**Answer:**

**Interrogatory No. 2:**     Identify each person with knowledge relating to the claims in Plaintiff's Complaint in this case and/or defenses thereto and for each person, identify the subject(s) on which each person has knowledge.

**Answer:**

**Interrogatory No. 3:**    State the basis, in detail, for Defendant's denial of liability to Plaintiff in this case.

**Answer:**

**Interrogatory No. 4:**    State the basis, in detail, for each of Defendant's affirmative defenses in this case.

**Answer:**

**Interrogatory No. 5:**    State the basis, in detail, for Defendant's denial that Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case, should be certified.

**Answer:**

**Interrogatory No. 6:**    Since December 4, 2003, identify the make and model number of each POS Terminal from which you have issued Sales Receipts and for each, identify the date you began using it, the date(s) you upgraded any applicable software, the date(s) it was serviced and/or repaired, the date on which you ceased using it and the vendor from which/whom you obtained it.

**Answer:**

**Interrogatory No. 7:**    Since December 4, 2003, identify each Merchant Bank you have engaged to process Transactions and for each, identify the date on which you engaged it and the date on which you disengaged from it.

**Answer:**

**Interrogatory No. 8:**    Identify all oral and/or written communications you have received related to Truncation Requirements and/or DSS.

**Answer:**

**Interrogatory No. 9:**    Identify all Trade Associations with which you have been affiliated and, for each, identify the date your affiliation began and the date your affiliation ended.

**Answer:**

**Interrogatory No. 10:**    Identify all Trade Publications to which you have subscribed and, for each, identify the date your subscription started and the date your subscription ended.

**Answer:**

**Interrogatory No. 11:**    Identify all Business Associations with which you have been affiliated and, for each, identify the date your affiliation began and the date your affiliation ended.

**Answer:**

**Interrogatory No. 12:**    Identify all Business Publications to which you have subscribed and, for each, identify the date your subscription started and the date your subscription ended.

**Answer:**

**Interrogatory No. 13:**    State, in detail, your procedures, if any, for verifying that you are compliant with the Truncation Requirements and identify any modifications to the procedures since December 4, 2003.

**Answer:**

**Interrogatory No. 14:**    Indentify the person(s) on your behalf responsible for verifying your compliance with the Truncation Requirements, including the date(s) each person(s) was/is responsible for such verification.

**Answer:**

**Interrogatory No. 15:**    From December 4, 2003 to the date on which you became compliant with the Truncation Requirements, describe in detail all action you took to be compliant with the Truncation Requirements and, for each, state the date on which the action was taken.

**Answer:**

**Interrogatory No. 16:**    State the date on which you became aware of the Truncation Requirements.

**Answer:**

**Interrogatory No. 17:**    State the date on which you became aware that you did not meet the Truncation Requirements.

**Answer:**

**Interrogatory No. 18:**    State the date on which you became compliant with the Truncation Requirements.

**Answer:**

**Interrogatory No. 19:**    State the number of Transactions at your establishment from December 4, 2006 to the date on which you became compliant with the Truncation Requirements.

**Answer:**

**Interrogatory No. 20:**    Since December 4, 2003, identify all persons that have offered or solicited to provide (by sale or otherwise) you with a POS Terminal and/or software upgrade(s) to ensure your compliance with the Truncation Requirements.

**Answer:**

**Interrogatory No. 21:**    Describe your document retention and destruction policy(ies), stating the date(s) on which changes were made, if any, and identifying what those changes were.

**Answer:**

**Interrogatory No. 22:**    For the period December 4, 2006 through the date on which you became compliant with the Truncation Requirements, identify what Cardholder information you gathered related to Transactions at your establishment, the duration for which you maintain that information and whether that information is currently retrievable electronically.

**Answer:**

**Interrogatory No. 23:**    Since December 4, 2006, identify all persons to whom you issued Sales Receipts that included full Card Numbers and/or Expiration Dates.

**Answer:**

**Interrogatory No. 24:**    Identify each person whom you expect to call at trial and state the subject matter on which such person is expected to testify.

**Answer:**

**Interrogatory No. 25:**    If any of your response(s) to the included Requests for Admission is/are anything other than an unqualified admission(s), state the basis, in detail, for your response(s).

**Answer:**

## Requests to Produce

1. All documents related to Plaintiff.

2. All documents consulted in responding to these Written Discovery Requests.

3. All documents related to the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

4. All documents related to your outsourcing, if any, of the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

5. All documents related to Truncation Requirements.

6. All documents related to FACTA.

7. All documents related to the SSC.

8. All documents related to DSS.

9. All documents related to Visa.

10. All documents related to MasterCard.

11. All documents related to any Merchant Agreement to which you have been a party.

12. All documents related to all Trade Associations with which you have been associated.

13. All documents related to all Trade Publications to which you have subscribed.

14. All documents related to all Business Associations with which you have been associated.

15. All documents related to all Business Publications to which you have subscribed.

16. All documents related to any offer or solicitation to provide (by sale or otherwise) you with a POS Terminal and/or software upgrade(s) to ensure your compliance with the Truncation Requirements.

17. For the time period one December 4, 2006 through the date on which you became compliant with the Truncation Requirements, all documents identifying all Transactions at your establishment by date, time and type.

18.    For the time period December 4, 2006 through the date on which you became compliant with the Truncation Requirements, all documents identifying the number of Transactions at your establishment.

19.    All documents supporting your denial of liability in this case.

20.    All documents supporting your affirmative defenses in this case.

21.    All documents supporting your denial that Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case, should be certified.

22.    For Transactions at your establishment from December 4, 2006 through the date on which you became compliant with the Truncation Requirements, all Sales Receipts that included full Card Numbers and/or Expiration Dates.

23.    For Transactions at your establishment from December 4, 2006 through the date on which you became compliant with the Truncation Requirements, all documents identifying Cardholders to whom you issued Sales Receipts that included full Card Numbers and/or Expiration Dates.

24.    All documents related to your procedures, if any, for verifying compliance with the Truncation Requirements.

25.    All of your organizational charts.

26.    All documents related to your document retention and destruction policy(ies).

27.    All exhibits you intend to use at trial.

28.    All documents related to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment, if any, that may be entered against you in this case.

29.    All documents related to any indemnification and/or contribution agreement under which any person may be liable to indemnify you, in whole or in part, or contribute to you for payments made to satisfy a judgment, if any, that may be entered against you in this case.

## Requests For Admission

**Request for Admission No. 1:**    Between December 4, 2006 and August 12, 2007, you issued Sales Receipts.

**Response:**

**Request for Admission No. 2:**    Between December 4, 2006 and August 12, 2007, you issued to Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 3:**    Between December 4, 2006 and August 12, 2007, you issued to Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 4:**    From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you issued Sales Receipts.

**Response:**

**Request for Admission No. 5:**    From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 6:**    From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 7:**    From December 4, 2006 to August 12, 2007, you issued more than 40 Sales Receipts.

**Response:**

**Request for Admission No. 8:**    From December 4, 2006 to August 12, 2007, you issued more than 40 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 9:**    From December 4, 2006 to August 12, 2007, you issued more than 40 Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 10:**    From December 4, 2006 to August 12, 2007, you issued more than 100 Sales Receipts.

**Response:**

**Request for Admission No. 11:**    From December 4, 2006 to August 12, 2007, you issued more than 100 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 12:**    From December 4, 2006 to August 12, 2007, you issued more than 100 Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 13:**    From December 4, 2006 to August 12, 2007, you issued more than 1000 Sales Receipts.

**Response:**

**Request for Admission No. 14:**    From December 4, 2006 to August 12, 2007, you issued more than 1000 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 15:**    From December 4, 2006 to August 12, 2007, you issued more than 1000 Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 16:**    On August 12, 2007, you issued Sales Receipts from a POS Terminal.

**Response:**

**Request for Admission No. 17:**    From December 4, 2006 to August 12, 2007, you issued Sales Receipts from a POS Terminal.

**Response:**

**Request for Admission No. 18:**    From December 4, 2006 to August 12, 2007, you issued all of your Sales Receipts from the same POS Terminal.

**Response:**

**Request for Admission No. 19:**    From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you issued all of your Sales Receipts from the same POS Terminal.

**Response:**

**Request for Admission No. 20:**    Your POS Terminal was first put into use by you on or after January 1, 2005.

**Response:**

**Request for Admission No. 21:**    Your POS Terminal was first put into use by you before January 1, 2005.

**Response:**

**Request for Admission No. 22:**    Prior to December 4, 2006, you were aware of the Truncation Requirements.

**Response:**

**Request for Admission No. 23:**    Prior to December 4, 2006, you were aware that you would be prohibited by FACTA from issuing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 24:**    Prior to December 4, 2006, you were aware that you would be prohibited by FACTA from issuing Sales Receipts that included Expiration Dates as of December 4, 2006.

**Response:**

**Request for Admission No. 25:**    Prior to December 4, 2006, your Merchant Bank advised you that you would be prohibited by FACTA from issuing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 26:**    Prior to December 4, 2006, your Merchant Bank advised you that you would be prohibited by FACTA from issuing Sales Receipts that included Expiration Dates as of December 4, 2006.

**Response:**

**Request for Admission No. 27:**    Prior to December 4, 2006, Visa advised you that you would be prohibited by FACTA from issuing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 28:**    Prior to December 4, 2006, Visa advised you that you would be prohibited by FACTA from issuing Sales Receipts that included Expiration Dates as of December 4, 2006.

**Response:**

**Request for Admission No. 29:**    Prior to December 4, 2006, MasterCard advised you that you would be prohibited by FACTA from issuing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 30:**    Prior to December 4, 2006, MasterCard advised you that you would be prohibited by FACTA from issuing Sales Receipts that included Expiration Dates as of December 4, 2006.

**Response:**

**Request for Admission No. 31:**    Prior to December 4, 2006, one or more Trade Associations advised you that you would be prohibited by FACTA from issuing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 32:**    Prior to December 4, 2006, one or more Trade Associations advised you that you would be prohibited by FACTA from issuing Sales Receipts that printed Expiration Dates as of December 4, 2006.

**Response:**

**Request for Admission No. 33:**    On August 12, 2007, your POS Terminal had the capacity to issue Sales Receipts that did not include full Card Numbers.

**Response:**

**Request for Admission No. 34:**    From December 4, 2006 to August 12, 2007, your POS Terminal had the capacity to issue Sales Receipts that did not include full Card Numbers.

**Response:**

**Request for Admission No. 35:**     On August 12, 2007, your POS Terminal had the capacity to issue Sales Receipts that did not include Expiration Dates.

**Response:**

**Request for Admission No. 36:**     From December 4, 2006 to August 12, 2007, your POS Terminal has had the capacity to issue Sales Receipts that did not print Expiration Dates.

**Response:**

**Request for Admission No. 37:**     As of August 12, 2007, you did not meet the Truncation Requirements.

**Response:**

**Request for Admission No. 38:**     As of August 12, 2007, you knew that you did not meet the Truncation Requirements.

**Response:**

**Request for Admission No. 39:**     As of August 12, 2007, you knew that you were prohibited from including full Card Numbers on Sales Receipts.

**Response:**

**Request for Admission No. 40:**     As of August 12, 2007, you knew that you were prohibited from including Expiration Dates on Sales Receipts.

**Response:**

**Request for Admission No. 41:**     From December 4, 2006 to August 12, 2007, you knew that you did not meet the Truncation Requirements.

**Response:**

**Request for Admission No. 42:**     From December 4, 2007 to August 12, 2007, you knew that you were prohibited from including full Card Numbers on Sales Receipts.

**Response:**

**Request for Admission No. 43:**    From December 4, 2007 to August 12, 2007, you knew that you were prohibited from including Expiration Dates on Sales Receipts.

**Response:**

**Request for Admission No. 44:**    On August 12, 2007, you willfully issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 45:**    On August 12, 2007, you willfully issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 46:**    On August 12, 2007, you knowingly issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 47:**    On August 12, 2007, you knowingly issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 48:**    On August 12, 2007, you recklessly issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 49:**    On August 12, 2007, you recklessly issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 50:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you willfully issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 51:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you willfully issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 52:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you knowingly issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 53:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you knowingly issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 54:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you recklessly issued Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 55:**      From December 4, 2006 to the date on which you became compliant with the Truncation Requirements, you recklessly issued Sales Receipts that included Expiration Dates.

**Response:**

**Request for Admission No. 56:**    The number of putative class members in Plaintiff's Class, as defined in paragraph 15 of the Class Action Complaint in this case, is so numerous that joinder of all putative class members is impracticable.

**Response:**

**Request for Admission No. 57:**    The number of putative class members in Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case, satisfies the numerosity requirement of Federal Rule of Civil Procedure 23.

**Response:**

**Request for Admission No. 58:**    The questions of law and fact affecting Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case, are common to all putative members of the Class.

**Response:**

**Request for Admission No. 59:**    The questions of law and fact affecting Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case, predominate over any questions affecting only individual putative members of the Class.

**Response:**

**Request for Admission No. 60:**    Plaintiff's claims are typical of the putative members of Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case.

**Response:**

**Request for Admission No. 61:**    Plaintiff is an adequate class representative for Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case.

**Response:**

**Request for Admission No. 62:**    You have no evidence that Plaintiff is not an adequate class representative for Plaintiff's proposed Class, as defined in paragraph 15 of the Class Action Complaint in this case.

**Response:**

**Request for Admission No. 63:**    Plaintiff's counsel in this case are adequate class counsel.

**Response:**

**Request for Admission No. 64:**    You have no evidence that Plaintiff's counsel in this case are not adequate class counsel.

**Response:**


JOHN DREXLER, Plaintiff,

By:    _____
       Paul F. Markoff, One Of His Attorneys

Dated: March 6, 2008

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.782.5808

Paul F. Markoff
Markoff Law Firm, LLC
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.726.4162

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing *Plaintiffs' First Set of Written Discovery Requests (Interrogatories, Requests for Production and Requests for Admissions of Fact)* was served upon the following by regular mail, postage prepaid, on this ___6th___ day of March, 2008:

Thomas N. Tsatas, President
Clarke's Restaurant, Inc.
2441 N. Lincoln Ave.
Chicago, IL 60614

Kym Lozano